MICHAEL JODD ET AL., Respondents, *v.* THOMAS B. DUN-
CAN ET AL., Appellants.

December 7, 1880.

1. Where the petition to establish a mechanic's lien declares on a *quantum meruit*, and the proof shows a written contract, this is not fatal to the lien, where the price charged is not in excess of the contract price, and where the work and materials are shown to have been put into the building and to have been worth the price charged.

2. A building contract made with one in possession of land under a contract to purchase, may be a contract with the owner within the meaning of the mechanics' lien law; and where the contract to purchase is not carried out, a lien against the building may be established, and the mechanic may obtain a judgment under which the building may be sold, with a right of removal.

3. Where the person in possession under a contract to purchase continues the erection of the houses after failure to purchase, without opposition from the owner of the land, he may be considered as having such an interest as will enable him to waive a strict compliance with the contract on the mechanic's part.

4. That the contractor, as a security, obtains the signature of a third party to the contract with the owner is not a waiver of his lien.

APPEAL from the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

A. M. GARDNER, for the appellants: A party having a mere contract for purchase cannot charge a building erected on the premises with a lien. — *Hayes* v. *Fessenden*, 106 Mass. 228 ; *Metcalf* v. *Hunnewell*, 1 Gray, 297 ; *Squires* v. *Fithian*, 27 Mo. 134 ; *Hause* v. *Thompson*, 36 Mo. 450. Even though he be in possession under such a contract. — *Thaxton* v. *Williams*, 14 Pick. 49 ; *Calloway* v. *Freeman*, 29 Ga. 408. And even though the owner had notice of the intention to build, and knew of the work upon the building. — *Wells* v. *Bannister*, 4 Mass. 514 ; *Stone* v. *Crocker*, 19 Pick. 292. Nor, under such circumstances, and where the furnishing of labor and materials was purely voluntary, could a lien attach to the building. — *Washburn* v. *Sproat*, 16 Mass. 449 ; *Oakman* v. *Dorchester, etc., Ins. Co.*, 98

Mass. 47; *Sudberry* v. *Jones*, 8 Cush. 184; *Leland* v. *Clark,* 17 Vt. 403; *Bridwell* v. *Clark,* 39 Mo. 170. A building contract must be made with the owner of the land. *Peck* v. *Bridwell*, 6 Mo. App. 451; *Hance* v. *Thompson*, 36 Mo. 450; *Hance* v. *Carroll*, 37 Mo. 378; *Redman* v. *Williamson*, 2 Iowa, 488. Taking other security, either personal or on property, discharges the lien. — *Brady* v. *Anderson*, 24 Ill. 113; *Kinzey* v. *Thomas*, 28 Ill. 502.

O. G. HESS and B. W. PRESCOTT, for the respondents: The suit was properly brought upon a *quantum meruit*. Work may be commenced under a special contract and may be abandoned, yet if the service is of value and accepted, recovery for the value of the same may be had. — *Rickey* v. *Zeppenfeld*, 64 Mo. 281; *Eyermann* v. *Mount Sinai Cemetery*, 64 Mo. 490; *Yeates* v. *Ballentine*, 56 Mo. 534; *Cramer* v. *Bates*, 49 Mo. 525; *Lamb* v. *Brolaski*, 38 Mo. 53; *Dutro* v. *Walker*, 31 Mo. 516; *Law* v. *Sinclair*, 27 Mo. 310, 508; *Downey* v. *Burke*, 23 Mo. 228; *Lee* v. *Ashbrook*, 14 Mo. 378; *Thompson* v. *Allsman*, 7 Mo. 530; *Marsh* v. *Richardson*, 29 Mo. 99; *Helm* v. *Wilson*, 4 Mo. 43. One in possession of land under a contract to purchase has such an interest as will maintain a lien against a building erected thereon under a contract with him. — *Hotel Co.* v. *Sauer*, 65 Mo. 288; *Smith* v. *Phelps*, 63 Mo. 588; *Crandall* v. *Cooper*, 62 Mo. 480; *Fleitz* v. *Vickery*, 3 Mo. App. 593; Wag. Stats. 908, sect. 3. To constitute a waiver of lien by the taking of other security, the security taken must be inconsistent with the lien right. — Ph. on Liens, sect. 274; *Greene* v. *Ely*, 2 Greene (Iowa), 508; *Crean* v. *McAfee*, 2 Miles, 214.

BAKEWELL, J., delivered the opinion of the court.

This is an action by contractor against owner, to establish a mechanic's lien. The petition alleges that defendants Dentman and Ibers claim an interest in the premises, adverse to defendant Duncan, with whom, as owner, the contract was made.

There was a default as to Duncan. Defendants Dentman and Ibers deny generally all the allegations of the petition. They specifically deny that Duncan ever owned the premises described, and that he had any right or permission to erect any building thereon; they further say that the work was done under a written contract, the terms of which were not complied with. Plaintiffs reply that there was a waiver of the terms of the contract; that Duncan knowingly accepted the work and materials, and that the same was of value to him. They claim their reasonable value.

Judgment was rendered against Duncan, and that the claim is a lien upon the building described.

It appeared from the testimony that one Henry Doering owned a lot of ground in St. Louis, on which he had borrowed money, secured by a deed of trust. After the execution of the deed of trust, he made an agreement with defendant Duncan to sell him the lot for $2,282, of which $10 was paid in cash, and the remainder was to be paid in sixty days. This agreement was dated July 9, 1877. A warranty deed was to be delivered on payment of the purchase-money, and in default the agreement was to be void, the $10 paid was to be forfeited, and Duncan to be liable to Doering for all the damages sustained by non-fulfilment of the agreement.

Under this agreement Duncan went into possession. On August 8, 1877, Duncan contracted in writing with plaintiffs for the brick and stone work of a building which he proposed to erect on the premises. This brick and stone work was to be done according to certain plans and specifications drawn by the architect. The price agreed upon was $1,095; the work to be completed on October 1, 1877. This agreement was signed by Duncan and his mother. Before beginning the work, plaintiffs had a conversation with Doering, in which he told them that Duncan did not own the lot, but had an agreement for a conveyance on paying the purchase-money. Plaintiffs said to Doering that Duncan's mother had property in Illinois, and that they

thought they would be all right. Plaintiffs then proceeded to do the brick and stone work, with the knowledge of, and without any opposition from Doering. Almost all the work was done by October 30, 1877. Some of the brick-work then remained unfinished, because defendants Dentman and Ibers, who had the contract for the carpenter-work, had the plans and specifications, and neglected to go on with their work. This occasioned an interval of four months, during which no brick-work was done. The last brick-work was done on March 23, 1878, and the lien was filed on September 14, 1878. On May 2, 1878, the deed of trust of Doering was foreclosed; and the property was purchased at that sale by one Plass, who, on August 1, 1878, conveyed the same to defendants Dentman and Ibers.

It is contended by appellants that, on this state of facts, Duncan was not the owner of the premises, and had no interest in them to which a lien could attach.

One who has entered into possession under a contract to purchase, and who has erected buildings, may be regarded as an owner within the meaning of the mechanics' lien law, and as such, might, under the law, bind his equitable interest in the land. If the contract to purchase the land was not carried out, the expectation of title would fall; and the fact, that the owner knew that the building was being erected, and did not dissent, ought not to be construed into an assent that the land should be chargeable with the lien. Ph. on Liens, sects. 69–72, and cases. The existing law under which this lien was filed provides, however (Rev. Stats. sect. 3174), that the lien shall attach to the buildings in preference to any prior lien on the land, and any person enforcing such a lien may have such buildings or improvements sold, and the purchaser may remove the same within a reasonable time. Such purchaser gets, of course, no interest in the land. This right of enforcement is not confined to leasehold property, as has been expressly held in *Kansas City Hotel Company* v. *Sauer*, 65 Mo. 288. In every instance the improvements are regarded as the primary ob-

jects which confer the lien, and the land is added thereto where it belongs to the owner or proprietor. It seems to have been the intention of the Legislature, as is said by Judge Napton in *Smith* v. *Phelps*, 63 Mo. 588, to protect the title of the mechanic to a reimbursement for his expenditure in money or labor on the house he builds, by giving him a right to the house if all other means fail. We think that the contract in the present case, having been made by one who erected the buildings under a contract to purchase the land, was made with the owner, within the meaning of the law; and though under the evidence no lien could be established against the land, since the contract of purchase was not carried out, the lien upon the buildings was not therefore lost, and the mechanic, on obtaining his judgment, might have sold them under execution, the purchaser, if other than the owner of the land, being obliged to remove then within a resonable time. So, where land was sold under an encumbrance, and subsequently sold under a mechanic's lien for work begun subsequently to the orgin of the encumbrance, the first sale was held to release the land from the encumbrance of the mechanic's lien; but it was nevertheless held that the purchaser at the execution sale under the mechanics' lien might have bought the erections free from all liens. *Crandall* v. *Cooper*, 62 Mo. 478. In earlier cases (*Squires* v. *Fithian*, 27 Mo. 234; *Porter* v. *Tooke*, 35 Mo. 107; *Bridwell* v. *Clark*, 39 Mo. 172) it was held that the contract must be' made with one having an estate in the land, and that one owning a mere equity of redemption could not make a contract with a mechanic or material-man that would give to a lien filed by a mechanic priority to the mortgage or trust-deed. But these cases were decided under a different law from the one now under consideration; and if a legitimate conclusion from them is, that under the now existing law there can be no remedy by the material-man against the building in case he fails to establish a lien against the land, or that the remedy against the improvements alone is

given only in case of a lease, they are, so far, expressly disapproved by the Supreme Court in later cases. *Kansas City Hotel Co.* v. *Sauer, supra*.

The declaration in the present case is upon a *quantum meruit* or *quantum valebant*, and it is objected that, a written contract having been shown, there was a variance between the allegations and the proof, and that the court improperly admitted evidence, against the objection of appellants, as to the reasonable value of the work.

The lien is not created by contract, but by furnishing the materials and doing the work. In the present case there was no claim for extra work, but the evidence was that the provision of the contract as to time was waived, and that there were some variations from the original contract in immaterial particulars. Duncan remained in possession of the premises for more than six months after the work was begun, and for four months after the work was substantially completed. He assented to the variations in the contract and to the extension of time. The amount recovered is somewhat less than the contract price, and, for the purpose of establishing a lien against the building, we regard it as immaterial that the action was not upon the written contract. There is no question that the work and materials went into the building, that they were worth the amount recovered, and that Duncan agreed to pay at least that price for them. Nor is it pretended that any damage was occasioned to him or to the defendants Ibers and Dentman, the present owners of the land, by any delay of plaintiffs in completing their work. The testimony is that that delay was occasioned partly by the breach of contract on Duncan's part in not making payments according to the certificates of the architect, and partly by the wrongful act of appellants, who were the contractors for the woodwork and had possession of the plans and specifications, in refusing to allow plaintiffs to have these papers, which they needed to complete the work.

There was a period of about four months from the time

that plaintiffs had nearly finished their work during which nothing was done by them on the houses, for the reasons just stated. They then finished the job by putting some courses of brick on the top of the walls, bricking in the lookouts, and walling up the privy. This work was worth about $35, and is the last work that saves the lien. It appears to have been required by the contract, and the architect and many other witnesses swear that it was necessary to complete the job; and that as to the brick-work, it could not be done until the carpenters put up the lookouts, which was not done until a few days before this last brick-work was put in. The witnesses for defendants testify that this work was unnecessary to the making of a good job; but there can be no doubt, under the evidence, that it was done by the direction of Duncan.

Appellants contend that, as the contract of Duncan to purchase the lot was to be void by its terms if he did not pay the purchase-money to Doering within sixty days, — that is, by September 8, 1877, — and as he did not make his payment, he was thereafter a mere trespasser, and could have no further interest in the buildings or the lot. As we have said, it appears that he remained in possession for an indefinite time — not less than six months — after this, without any opposition from Doering; and Doering, after the time for payment had elapsed, still looked to him to fulfil his contract, and tendered him a deed. He cannot be regarded as a mere trespasser, or as having no interest in the buildings at the time the work of plaintiffs was almost completed, and was temporarily suspended in October. If Doering had any rights in the matter, he seems to have been careless of asserting them; nor, if he had put Duncan out, could he have retained the buildings without paying such mechanics and material-men as had taken proper steps to secure a lien against the building for materials and work actually furnished and performed. Nor, except that he asked for his money and tendered Duncan a deed, is there any evidence

that Doering ever notified Duncan to leave, or that he interested himself in the matter at all, after the contract between himself and Duncan was executed, in July.

We do not regard the fact that the contract for the building of the house was signed by the mother of Duncan, and that plaintiffs knew that she had property in Illinois, as being evidence of a waiver of the lien. The lien is expressly given by law, and ought not to be considered waived unless the intention to waive is plainly manifested. Nothing is shown in the conduct of the parties from which a waiver by implication could fairly be inferred. It does not appear that plaintiffs said anything or did anything to induce defendants to believe that they did not look to the improvements for their pay. The statement by them to Doering that Mrs. Duncan had property, and that they thought they were safe, was not in itself enough to constitute a waiver. Nor does it appear that appellants knew of this statement before their purchase; so that there can be no question of estoppel in the case.

It is not necessary to comment upon the instructions. They are, perhaps, not entirely consistent; but it does not appear that appellant could have been prejudiced thereby. On the evidence, the plaintiffs were clearly entitled to a lien against the improvements, and no sufficient reason appears for disturbing the judgment. It will therefore be affirmed. All the judges concur.