SAWYER and AUSTIN LUMBER COMPANY, Appellant, v. CLARK et al.

Division Two, March 17, 1903.

1. **Mechanic's Lien: PETITION: DESCRIPTION: AMENDMENT.** The use of a term in the description of land which the context shows was a mere mistake for another, will not vitiate the description if the substitution of the proper term will make it good. For instance, if the course of the measurements used in the petition for a mechanic's lien locates land on the north side of a street, no importance will be attached to the mistaken use of the word "south" instead of the word "north" side of the street as the point where the measurements begin. Besides, if the use of such word "south" in the particular description is of any force, and there is a general description given in the petition which is correct, the court should permit the plaintiff to amend in the midst of the trial by striking out the specific description.

2. ———: **DESCRIPTION: NOTICE TO OWNERS: OBLITERATION: LIEN ON BUILDING ONLY.** Fisher had contracted to sell to Clark 25 feet off of the eastern portion of lot 19 and one foot nine and one-half inches off of the western side of lot 18, and plaintiff had furnished to Clark the materials which went into the house constructed thereon, and in its lien paper correctly gave the dimensions of the lot according to Clark's contract of purchase but referred to it as a part of lot 19, leaving out all mention of lot 18. *Held*, that this description in a suit against Clark, Fisher and prior mortgagees, to establish a lien on the house alone, furnished a reasonable means of identification, and as they were the only persons who could be affected by the inaccuracy, it was sufficient. It was sufficient as to Fisher, who had obliterated the lines of the original plat by the terms of his written contract to convey to Clark lands of the dimensions mentioned in the lien. It was sufficient to the prior incumbrancers since they would have no trouble in locating the building by the lien paper, and as only the building is subjected to the lien their incumbrance on the lot was not affected.

3. ———: **RIGHT TO LIEN: EXPIRED CONTRACT OF SALE.** The materialman is entitled to a lien on the building for materials furnished in pursuance to a contract with the equitable vendee of the land in possession. If the materials were furnished to one in possession who had entered into a written contract to buy the land and paid $50 on the purchase price and agreed to pay the balance within sixty days, but at the end of that time his right was extinguished because of his failure to pay the balance, the materialman is entitled to his lien on the building, in a suit against him and the owner and prior incumbrancers.

Transferred from St: Louis Court of Appeals.

REVERSED AND REMANDED.

*Robert L. McLaran* and *Jared W. Young* for appellant.

(1)    Clark was an owner within the purview of the statutes relating to mechanics' liens, and, as such, could subject the property to a lien.    Judd v. Duncan, 9 Mo. App. 417; O'Leary v. Rowe, 45 Mo. App. 567; Kline v. Perry, 51 Mo. App. 422; Meyer v. Christian, 64 Mo. App. 203.    (2)    Plaintiff's description of the lot was sufficiently accurate, and the partially incorrect description by metes and bounds in the petition may be rejected as surplusage on the maxim "*Falsa demonstratio non nocet.*"    Brick and Machine Company v. Brick and Quarry Company, 151 Mo. 501, 52 S. W. 401; Rall v. McCrary, 45 Mo. App. 365; DeWitt v. Smith, 63 Mo. 263; Cahill v. Orphan School, 63 Mo. App. 28; Bambrick v. King, 59 Mo. App. 284.    (3)    The error in credits in the lien account was merely a clerical one and self-explanatory.

*Lyon & Swarts* for respondents.

(1)    The materials furnished by the appellant to defendant Clark were not furnished under a contract with the owner or proprietor of the land upon which the building was erected, nor with a lessee or mortgagor, and therefore appellant was not entitled to a lien on the building separately from the land.    Planing Mill Co. v. Christophel, 60 Mo. App.  106; State to use v. Hailey, 71 Mo. App. 200.    (2)    The description of the land, both in the lien account and in the petition, is fatally defective, for the following  reasons:    That  the building is therein located solely on lot 19, in city block 3732, when in fact it is located partly on lot 19 and partly on lot 18, as shown by the evidence in behalf of the appellant; that in the petition the land is located on

the south side of Evans avenue, when in fact it is located on the north side of Evans avenue, as shown by the evidence in behalf of the appellant; and that the descriptions of the land, as contained in the lien account and the petition, when taken together, are so uncertain, vague and contradictory as to render the description totally insufficient and fatally defective. Lemly v. La-Grange Iron & Steel Co., 65 Mo. 545; Mechanics' Planing Mill Co. v. Nast, 7 Mo. App. 147. (3) The items of the lien account, as filed by appellant, are conclusive against appellant. Coe v. Ritter, 86 Mo. 277. (4) Appellant was not entitled to a lien, because it failed to show, and there is no evidence whatever to show, how much of the lumber went into that part of the building on lot 19, which was the only lot referred to in the lien account and petition, or how much of the lumber went into that part of the building on lot 18. Fitzpatrick v. Thomas, 61 Mo. 512; Barnett's Executrix v. Murray, 62 Mo. App. 500; Miller v. Hoffman, 26 Mo. App. 199.

GANTT, P. J.—On February 18, 1898, S. J. Fisher contracted to sell to C. M. Clark a lot on the north side of Evans avenue in St. Louis city, with a frontage of twenty-six feet and nine and one-half inches and a depth of one hundred and sixty-five feet. The lot was made up of twenty-five feet of the eastern portion of lot 19 and one foot nine and one-half inches off of the western portion of lot 18 of city block 3732. Fifty dollars cash was paid on account of said purchase, and the balance of the purchase money was agreed to be paid forty days thereafter. There was evidence tending to show that the purchaser was allowed sixty days additional time to make this deferred payment. Plaintiff under a contract with the purchaser, furnished lumber for the erection of a building on said lot and brought this action to establish a mechanic's lien upon said building and the land upon which it stood. The improvement consisted of a two-story brick building arranged as flats, which was twenty-six feet wide. It stood seven and one-half inches west of the eastern line,

and two inches east of the western line of the lot, which Fisher agreed to convey to Clark. The evidence tended to show that the lumber for whose price the suit was begun, entered into the construction of said building, and was furnished for that purpose between the sixth or eighth day of March and the second day of April, 1898. The lien account correctly stated the dimensions of the lot which was the subject of the contract between Fisher and Clark, but referred to it as part of lot 19 of city block 3732, when in point of fact it was composed and made up of the contiguous portions of lots 19 and 18 in the proportions specified in the contract between Fisher and Clark. After the introduction of the lien account, plaintiff moved the court to permit an amendment of the petition, so as to conform its description of the property to the description given in the lien account, which plaintiff insisted could be done by merely striking out the specific boundary mentioned in the petition, which erroneously showed that the south instead of the north line of Evans avenue, was the beginning point of the lot. The court overruled this motion, to which exception was duly saved. Thereupon plaintiff disclaimed any right to subject the land on which the building was situated to a mechanic's lien, the proof showing that up to the time of the trial, Clark, the purchaser, had not paid the balance of the purchase money, nor acquired title to the land further than resulted from his contract with Fisher, the owner, but plaintiff insisted that it was still entitled to a lien against the building. The evidence showed that Clark was in possession of the lot, under his contract to purchase it, during the whole time of the accrual of plaintiff's account and until the erection and completion of the building on said lot.

The cause was submitted to the court without a jury. Plaintiff requested the court to give the following declarations of law:

"1. The court declares the law to be that if the court believes from the evidence that defendant Clark was in possession of the land under and by virtue of

a contract to purchase the same from defendant Fisher, the owner, and while in possession thereof, began the erection of a building thereon, then said Clark had an interest in said land as owner within the purview of the Missouri statutes and could subject said building and his interest in the land to a mechanic's lien.

"2.   The court further declares the law to be, that if the court believes from the evidence that plaintiff furnished material upon the building erected by said Clark on the land described in the plaintiff's lien and petition, and under a contract with said Clark, and that said material entered into and became a part of said building, and that thereafter plaintiff complied with all the statutory requirements for establishing a mechanic's lien, then plaintiff is entitled to such a lien on said building.

"3.   The court declares the law to be, that if the court believes from the evidence that defendant Fisher, being the owner of lots 18 and 19 in block 11 of Evans Place in city block 3732 of the city of St. Louis, entered into a contract of sale with defendant Clark whereby he agreed to sell to him the eastern twenty-five feet of said lot 19 and the western one foot nine and one-half inches of lot 18, and in pursuance of said agreement said Clark entered upon and took possession of said piece of land and began the erection of improvements thereon, then said lot of land is one complete and entire lot as regards defendants Fisher and Clark and all those claiming through or under them.

"4.   The court declares the law to be that although the court may find from the evidence that the building erected on the lot of land in question is situated on contiguous lots owned by defendant Fisher, plaintiff is nevertheless entitled to a mechanic's lien on the building situated thereon, if the lien papers are otherwise good."

The court refused all of the foregoing declarations, and at the instance of defendant declared against the right of plaintiff to recover a lien, and accordingly

gave judgment for defendant, from which plaintiff has appealed to this court.

This appeal has been transferred to this court by the St. Louis Court of Appeals, owing to the fact that one of the judges of that court deemed it in conflict with prior decisions both of that court and of this court.

The opinion of the majority, by Judge Bond, is as follows:

"Respondents insist that there are such imperfections in the description of the property in the petition and lien as to justify the ruling of the court. The allegation in the petition that the beginning point in the boundary of the lot was on the *south* line of Evans avenue, is shown to have been a mere error in the use of that term when the term *north* was meant by a notation of the subsequent courses and distances completing the description of the lot. These showed that starting from the beginning point the course was north one hundred and sixty-five feet ten inches, thence east twenty-six feet nine and one-half inches, south one hundred and sixty-five feet ten inches, thence west to the beginning. This description would take in the width of the street as the southern frontage and a portion of the lot, which would be a patent error, since the vendor could not convey a public street. As this could not have been intended, and as the course of the measurements *located* the land on the north side of the street, it is demonstrable that the pleader intended to allege that the beginning point was on the north line of the street, and that by inadvertence or clerical error the word *south* was inserted in lieu of the word *north*. The use of a term in the description of land which the context shows was a mere mistake for another, will not vitiate the description if the substitution of the proper term will complete it. We, therefore, attach no importance whatever to the evident misuse of the word *south* for *north* in the description of the land given in the petition. Besides, if there had been any force in respondent's contention on this point, it would have

been the duty of the trial court to have allowed appellant to strike out the specific description of the land set forth in its petition, and to have proceeded under the *general* description of the land given in the petition which was in entire conformity with the full description of the land given in the lien paper.

"But respondents also contend that the lien paper itself did not contain a sufficient description of the property under the statute. The only objection which can be urged to its sufficiency is, that after giving correctly the full dimensions of the lot, the lien paper locates the lot in question wholly on what was known as lot 19 in the divisions of the city block, when in point of fact it projected one foot, nine and one-half inches over lot 18, as shown by the plat of the city block. The only persons who could be affected by this inaccuracy of description were the owners or prior incumbrancers of the land. To each of these the description given in the lien paper furnished reasonable means of identification of the lot. As to Fisher, the owner, the recital in the lien paper of the exact measurements of the lot as set forth in his contract with Clark, necessarily affected him with knowledge of its true location. As to prior incumbrancers the description of the property given in the lien paper if followed out, would have carried them to the spot where they would have discovered the house erected on lot 19 and that it projected over the contiguous lot. This fact would have afforded them further information that the owner of the building was in possession of some part of lot 18 under his contract with their grantor. In view of the distinct designation of the locality of the property thus afforded by the description thereof in the lien paper, and the further fact that appellant only claimed on the trial a right to subject the building alone to a lien for its demand, it is difficult to see any reasonable basis for the theory of respondents that the correct description of the dimensions of the property given in the lien paper was invalidated by the inaccuracy of locating the lot thus described one foot, nine and one-

half inches west of its eastern boundary line, when the situation of the building on the true location of the lot and the contract in the hands of the owner of the building who was in possession of the lot as truly located, would have informed any one seeking to locate the property described in the lien paper of its true and correct boundary line.  Under the evidence in this record the description of the property in the petition and in the lien paper was sufficient to meet the requirements of the statute as against defendants, so far as to charge the building only with a mechanic's lien, if it can be held that appellant was entitled to that relief.

"But respondents insist that appellant had no contract with the owner of the land, and hence is not entitled to a lien against the building for the material which entered into its construction.  The statutes governing the right of a materialmen to charge the building into which his material has entered with a lien for its value, afford the right upon the condition that the material is so furnished 'under or by virtue of any contract with the owner or proprietor' of the land upon which the building shall be erected, and they extend the right both to the building and 'upon the land belonging to such owner or proprietor' and as to the latter (the land) 'to the extent and only to the extent of all the right, title and interest owned therein by the owner or proprietor of the building.'  As to the building the statute prefers the lien of the materialman to the lien of prior incumbrancers upon the land, and permits the sale and removal of said building in the enforcement of such lien.  [R. S. 1889, secs. 6705, 6706 and 6707; K. C. Hotel Co. v. Sauer, 65 Mo. 279; Crandall v. Cooper, 62 Mo. 478; Reilly v. Hudson, 62 Mo. 383; Seibel v. Siemon, 52 Mo. 363.]  In the case in hand the contract for the material was made between appellant and C. M. Clark, who had paid a part of the purchase money for the land upon which the building was to be erected, and was in possession under a written contract executed by the holder of the legal title to convey the land in fee to Clark upon the pay-

ment by him of the balance of the price. Under all the principles of law applicable to the transfers of title to real estate, Clark, by virtue of these facts, became vested with an equitable right or interest in the land, which entitled him upon compliance with such contract to a deed in fee. That it was the design of the statute to recognize as owner one who held the title, legal or equitable, which constituted him such under the rules applicable to conveyances of real estate, can not be denied. The terms of the statute fully warrant this proposition, and such has been the construction uniformly given to it. [O'Leary v. Roe, 45 Mo. App. l. c. 572; Jodd v. Duncan, 9 Mo. App. 417.] It is clear, therefore, that the contract made by appellant with Clark—who was then the equitable vendee of the land— was in the statutory sense a contract with one who was an owner or proprietor of the land. The lien of appellant attached when its material was first put into the building. Both at that time and when the last of its material had been put into the building, Clark was in possession of the lot under an unexpired contract entitling him to a deed upon the making of certain specific payments in the future. Beyond question the interest in the land so held by Clark was one which he might have conveyed or assigned at any time prior to the date fixed in his contract for the payment of the remainder of the purchase money of the lot. It was, therefore, such a title or interest as could be subjected to a mechanic's lien, providing the lien could be enforced before it should expire under the terms of the contract. The fact that when the lien suit was tried Clark had lost his interest in the land, can not deprive appellant of the right to enforce its lien against the building. For the lien having accrued under the valid statutory conditions against both the building and the lot, was not lost as to the one because the interest in the other had become valueless.

"The cases cited by respondent (60 Mo. App. 106; 71 Mo. App. 200) have no application. The former merely decided that the husband, who was not shown to

be the agent of his wife, could not charge with a me-
chanic's lien a house which he had caused to be erected
on her real estate.   The latter case merely announced
that a building erected on premises, under a contract
not shown to have been made with the owner or pro-
prietor, could not be made the subject of a mechanic's
lien.   On the other hand, in the case at bar, as has been
seen, the contract for the improvement *was* made with
an owner of the land in the statutory sense.   Hence,
under the plain language of the sections cited, the ma-
terialman was entitled to a lien against both the build-
ing and the lot to the extent of Clark's interest in the
latter.   If his ownership had continued to the date of
the trial of this suit, appellant might have subjected
his title to the land for whatever it was worth, as well
as the building, to a lien for its material, but its right
to subject the building alone is not conditioned in the
statute upon the *continuance* of the title of the owner
of the land at the time it contracted with him for the
erection of the building, and hence appellant was not
precluded from charging the building by the subse-
quent failure of Clark's title to the land.

"Neither is this conclusion affected by the point
actually decided in Ranson v. Sheehan, 78 Mo. 668,
where it was held that a lien could not be enforced
against a building where the land on which it was sit-
uated was not described as required in the statute.   It
is true in that case there are some remarks of Com-
missioner PHILIPS to the effect that the Supreme Court
had held in a case like the one before him, that a lien
upon the building must always depend upon the ob-
tainment of a lien on the land, in support of which
he referred to Williams v. Porter, 51 Mo. 441.   He ex-
pressly says, however, that his personal views would
be otherwise, under the plain language of the statute,
if he were free to express it.   It will be observed that
the commissioner apparently overlooked the later de-
cision of the Supreme Court in Kansas City Hotel
Company v. Sauer, 65 Mo. 279, where the view of the
Supreme Court as announced by Judge SHERWOOD is

exactly the reverse of that ascribed to it by the commissioner. It will be further noted that Judge SHERWOOD, the only member of the court as it was then constituted who is now a member of that body, *dissented in toto* to the decision of Commissioner PHILIPS. Under these circumstances the remarks in that case, beyond the point in judgment, can not be held authoritative, opposed as they are to the latest previous decision of the Supreme Court, and being also in the teeth of the statute.

"The declarations of law requested by appellant are in accord with the views expressed in this opinion, and should have been given by the trial judge. For this error in refusing them, and giving contrary instructions on defendant's behalf, the judgment herein is reversed and the cause remanded."

Limited and guarded as this opinion is as to the right to a lien on the building in the construction of which plaintiff's materials were used, we think it is a proper construction of our mechanic's lien statute.

It has often been held that this statute should receive a liberal construction to effectuate its remedial purposes.

We think, moreover, that it can be distinguished from Ranson v. Sheehan, 78 Mo. 668. The rights of innocent purchasers or subsequent incumbrancers are not involved, and as pointed out by Judge BOND, the description in this lien was sufficient as to Fisher who obliterated the lines of the original plat by the terms of his written contract to convey, and the prior incumbrancers would have had no trouble in locating the building by the lien paper, and as the plaintiff seeks to subject the building only to its lien, their incumbrance on the lot was not affected. We are of the opinion that it would be sacrificing substance to form to deny the lien under the facts disclosed. We think the opinion is in harmony with the decision of this court in Press Brick & Machine Co. v. Quarry Co., 151 Mo. 519. In this case, as in that, the owner has obliterated the lot lines and the designation in the lien

of the lot as the eastern twenty-six feet nine and one-half inches of lot 19 was sufficient to give notice of the particular land sought to be affected, but as already said, the lien is not sought against the land itself, as Clark's title failed, and there is no such false description as to the building as could possibly mislead Fisher who carved out the new lot and put Clark in possession and because of Clark's failure to pay, still owns the lot, and the owners of the deed of trust held their incumbrance long prior to the erection of the building. We think the circuit court erred in refusing plaintiff's instructions and in giving defendant's, and the judgment is reversed and the cause remanded to be proceeded with in accordance with these views.

All concur.