McMILLAN AND PARKER, a Firm Composed of J. S. McMILLAN and R. S. PARKER, Respondents, v. THE BALL AND GUNNING MILLING COMPANY, a Corporation, Appellant.

**Springfield Court of Appeals, June 17, 1915.**

1. **MECHANICS' LIENS: Notice of Lien: Mistake Immaterial, When.** A mechanic's lien notice named the owner as a partnership instead of a corporation, which it was. Where defendant was in nowise misled thereby and the mistake was honestly made, it will not invalidate the lien.

2. **APPEAL AND ERROR: Evidence: Objections: When Essential.** Though certain evidence was introduced by plaintiff in the trial without any objection being made thereto, defendant on appeal is not precluded from questioning the probative force thereof, notwithstanding the general rule that a party on appeal cannot raise a special objection to the admission of testimony where no such objection was interposed at the trial.

3. **MECHANICS' LIENS: Notice: Pleading and Proof.** Plaintiff must plead and prove that he has filed a just and true account of all items due a subcontractor in order that he may have a right to maintain a suit for the enforcement of a mechanic's lien. [Secs. 8212, 8217, R. S. 1909.]

4. **———: When Lien Account Sufficient: Suit to Enforce Mechanics' Lien.** The account set out in a lump sum the amount due the subcontractor. Part of the amount was for items due under contract. The account was sufficient as to these but not as to items not furnished under contract. (ROBERTSON, P. J., dissenting.)

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED (*with directions*). CERTIFIED TO THE SUPREME COURT.

*R. F. Stewart, John P. McCammon* and *R. M. Sheppard* for appellant.

*F. T. Stockard* and *Howard Gray* for respondents.

STATEMENT.—This is a suit brought by McMillan & Parker, a copartnership, for the purpose of establishing and enforcing a mechanic's lien against property owned by defendant, The Ball & Gunning Milling Company, a corporation. The firm of Stone & Watts was also joined as a defendant, which firm was the original contractor in erecting an improvement on the land of The Ball & Gunning Milling Company. The plaintiffs entered into a subcontract set out in the record with the original contractors, Stone & Watts, to furnish labor and material which went into the improvement. This contract designated what was to be done and furnished by the plaintiffs, and plaintiff agreed to perform their part of the contract for the lump sum of $7200.

There is no claim that the petition fails to state a cause of action. It sets forth the relation the various parties bore to each other, and states that the labor and material were furnished under a subcontract, that the price to be paid for the labor and material furnished was $7635, that there had been given credit for cash received and material returned, $6781.60, leaving a balance due of $818.75. This is followed by a description of the property on which the improvement was constructed, setting forth when the last labor and material were furnished, and stating that within the statutory period a duly verified account was filed in the office of the circuit clerk of Jasper county, and that the statutory notice required of subcontractors was given. The petition closed by praying for judgment in the sum

of $818.75 against Stone & Watts and asking that the same be declared a lien against the property of The Ball & Gunning Milling Company.

The answer of The Ball & Gunning Milling Company was a general denial.

A judgment was rendered against Watts for the full sum of $818.75 and the same was declared a lien against the property of The Ball & Gunning Milling Company. No appeal was taken by Watts, and the record does not disclose what disposition was made of the case as to Stone.

The plaintiffs introduced evidence of having furnished the labor and material called for in their subcontract and that it went into the improvement on The Ball & Gunning Milling Company's land. It was admitted by the plaintiffs that their subcontract only called for the lump sum of $7200 as a payment for their labor and material and that credit should be given for the sum of $6781.60, which left due on their contract $418.40. After the work was started under this contract, Stone & Watts ordered plaintiffs to furnish labor and material to an amount of $400.35 as extras —that is, the foundations were made heavier and deeper—which sum, added to the original contract, made the total amount for labor and material furnished $7600.35, the amount claimed in the petition, and, allowing for the credit of $6781.60, there was left a balance due of $818.75, which is the sum for which judgment is asked. The contract set out in the record which was made between plaintiffs and Stone & Watts specifies the labor and material to be furnished.

There was offered in evidence the notice of an intention to file the lien. This notice was signed by plaintiffs and clearly designated the character of the improvement constructed, the land on which it was located, set out that the labor and material were furnished under the subcontract mentioned, and designated the date on which the lien would be filed. As to

the foregoing facts there is no dispute. This notice, however, named the balance due for which the lien would be filed at the sum of $797.15, and described the owner of the land as Ball & Gunning, a firm composed of George Ball and W. S. Gunning.

The defendant interposed an objection to the introduction of the notice in evidence because it described a copartnership as owning the land and was addressed to a copartnership rather than to the corporation. The Ball & Gunning Milling Company, the defendant named in the petition and the real owner, and further, because the notice described the amount due different from that sued for. The court overruled the objection and an exception was saved.

Plaintiffs then offered in evidence the lien filed in the circuit clerk's office, to which the defendant objected because it was made out against a firm and not against the defendant corporation. The objection was overruled and an exception saved.

The caption of the lien filed with the circuit clerk is as follows: "McMillan and Parker, a partnership, composed of J. S. McMillan and R. S. Parker, Subcontractors against Ball & Gunning, a firm composed of George Ball and W. S. Gunning, owners, and Stone and Watts, a firm composed of R. C. Stone and Len Watts, original contractors." This is followed by a correct description of the improvement and the land on which it was erected. It also contained the following:

## "STATEMENT OF ACCOUNT.

"Stone and Watts, a firm composed of R. C. Stone and Len Watts, in account with McMillan and Parker, a firm composed of J. S. McMillan and R. S. Parker.

"March 1, 1913, work begun on contract of building and constructing eight concrete wheat tanks to be built and constructed of sand, chat, cement and reinforced with iron rods and wire. Said wheat tanks

were constructed of the height of 62 feet above the foundation, and built on a good concrete foundation, which was built by the said McMillan and Parker. And the said McMillan and Parker also excavated for the erection of said eight wheat tanks. And that said work was completed on November 6, 1913. That the price of the cement, sand, chat, iron bars and wire, and the labor performed in the construction of said eight wheat tanks was $7600.35.

"Received cash in payment, .........$6760.00
"Credit by iron rods, ............... 21.60
"Total credits, ................... 6781.60
"Dec. 6, 1913. Leaving balance due, 818.75."
This was followed by a proper verification.

Plaintiffs also showed that in talking to Mr. Gunning, who was shown to be the president of the defendant corporation, he said he would refer to Ball as his partner. It was also shown that when the notice offered in this case was served on Gunning personally and before the lien statement was filed he said that Stone & Watts, the original contractors, had been paid in full and that there was nothing due them. There is no evidence in this record showing that the defendant, The Ball & Gunning Milling Company, knew what the terms of the contract were between the plaintiffs and Stone & Watts, nor is it shown that there was any contract whatever as to the extras furnished. So far as the record discloses we cannot tell whether the extras are claimed under any contract or merely the price is fixed as on a *quantum meruit*.

A jury being waived, the cause was tried by the court, and neither side offered any declarations of law. Judgment was rendered for the full amount of the balance claimed as due, $818.75. The defendant filed a motion for a new trial, stating, among other alleged grounds of error, the following: "2. The judgment is against the law as applied to the evidence in this case." "3. The court erred in admitting incompetent, irrele-

vant and immaterial evidence offered by the plaintiffs."

## OPINION.

FARRINGTON, J.—The appellant complains, first, that the court erred in admitting in evidence the notice of the lien and the lien filed for the reason that both show on their face that they named the owner of the land to be the *firm* of Ball & Gunning and not the defendant, The Ball & Gunning Milling Company, a corporation; and second, that the statement of the account set out is not a just and true account of the demand claimed as is contemplated by section 8217, Revised Statutes 1909, and that section 8212, Revised Statutes 1909, requires plaintiffs to comply with the section first mentioned in this respect before they have a right to impose a lien for labor and material—in other words, that before plaintiffs have carried the burden of making out a case they must introduce evidence showing a compliance with the provisions requiring that a just and true account be filed.

The respondents meet this contention by asserting that the naming of a partnership as the owner did not mislead the defendant corporation; that the misnaming was an honest mistake and was therefore immaterial. We uphold the respondents in this as the facts show an honest mistake in this respect and that the defendant was in no way hurt or misled, and pass the point by citing the case of The Fruin-Bambrick Construction Co. v. Jones, 60 Mo. App. 1. [See, also, Joplin Sash and Door Works v. Shade, 137 Mo. App. 20, 118 S. W. 1196; Henry v. Plitt, 84 Mo. 237; Bruner Granitoid Co. v. Klein, 100 Mo. App. 289, 73 S. W. 313.]

As to the second point urged by appellant the respondents contend, first, that the statement of account filed is sufficient to meet the requirements of the statute, and second, that as the defendant did not object

to the introduction of the statement on the ground that it was not a just and true account and because defendant did specifically object because made out against the wrong party, the defendant thereby admitted the sufficiency of the account except as to the special objection, and that the objection that the account was not just and true under the terms of the statute cannot be raised with the record in this condition in this court.

We will first dispose of respondents' second contention. The authorities cited by respondents sustain the general rule that a party cannot on appeal raise a special objection to the admission of testimony where no such objection was interposed at the trial, and that by making a special objection at the trial he admits that in other respects the evidence is admissible. It is needless to cite the many cases which uphold these statements of the law, respondents having collated a number of them in their brief. There is, however, an exception to these general rules within which we believe the facts put this case. The burden, of course, is always on a plaintiff not only to state a cause of action but to offer some evidence tending to establish each essential element necessary to permit a recovery; until he has done that he fails to make out a case, and up to that time, in theory at least, the defendant may occupy the position of an onlooker. Thompson on Trials (2d Ed.), vol. 1, sec. 691, p. 629, under the heading "Evidence having no Probative Value," states the rule as follows: "An exception to the foregoing rule relates to cases where the evidence, which is admitted without objection, is of such a character that the law ascribes to it no probative value whatever." Neither a failure to object nor a wrong objection can change the *legal effect* of evidence. Thompson on Trials (2d Ed.), vol. 2, sec. 2244, p. 1500, in dealing with this question, declares, citing Missouri cases, that it is the province of the court to determine the *legal effect* of evidence, and—quoting—"Thus,

where the evidence is all in, and the judge sees that it does not have the effect in law to entitle the plaintiff to recover, it is his duty to instruct the jury to find for the defendant.'' It is held in State v. Kaufman, 45 Mo. App. 656, that the notice of a local option election was insufficient and that such notice as is provided by statute is absolutely essential to the validity of the election. The court there said: ''The failure of defendant to object at the trial to the proof of notice of election does not bar him from questioning its legal effect when admitted. Permitting the introduction of the evidence unchallenged does not admit it to be *legally sufficient* for the purpose for which it was offered. Under defendant's demurrer to the evidence he was entitled to have the court determine that question.'' [See, also, Bartlett v. O'Donoghue, 72 Mo. 563; Pettis County v. Gibson, 73 Mo. l. c. 507; Minter Bros. v. Railroad, 56 Mo. App. 282.] We therefore hold that where evidence offered has not the *legal effect* to establish an essential element or fact which it was necessary for plaintiff to establish in order to be entitled to a judgment, a judgment in his favor must fall because of a failure of proof; and that his failure to offer probative evidence cannot be cured by an insufficient objection or no objection at all. A plaintiff failing to make out his case by not offering probative evidence of a material and essential fact can stand on no higher ground than a plaintiff who fails to state such essential fact in the petition. A petition, because of such a failure, is always open to attack as not stating a cause of action regardless of whether an objection was made thereto by demurrer. Then on what theory would the door be closed to the defendant to raise the point that no case has been made by the evidence when he complains thereof in a motion for a new trial?

Now, is the statement in the pleading that plaintiffs have filed a just and true account under the statute and an offer of evidence to sustain such averment

an essential element or fact which must be established by a subcontractor in order to maintain a suit to enforce a lien against a landowner? The statute, section 8212, R. S. 1909, provides that a subcontractor "upon complying with the provisions of this article" shall have for his work, materials, etc., a lien upon such building, etc. One of the provisions of that article is that, as shown by section 8217, Revised Statutes 1909, "to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and a true description of the property." The essentials of this last mentioned section are that the statement filed with the circuit clerk shall contain a just and true account, a true description of the property, and the naming of the contractor or owner, or both, if known. Plaintiff must plead, and show by his evidence, that he has complied in this particular in order that he have a right to maintain a suit for the enforcement of a mechanic's lien. This is held in the following cases: Burrough v. White & O'Connor, 18 Mo. App. 229; Boland v. Webster, 126 Mo. App. 591, 105 S. W. 34; Hall v. Johnson, 57 Mo. 521; Patrick v. Faulke, 45 Mo. 312; Williams v. Porter, 51 Mo. 441. While the courts have become more liberal in reference to a defective description, they have not upheld a lien where it was impossible to locate the land at all or the improvement or erection from the statement filed. [Sawyer v. Lumber Co., 172 Mo. 588, 597, 73 S. W. 137; Powers and Boyd Cornice and Roofing Co. v. Trust Co., 146 Mo. App. l. c. 51, 123 S. W. 490; Kirkwood Mfg. & Supply Co. v. Sunkel, 148 Mo. App. l. c. 143, 128 S. W. 528.]

The case of Clark & Lemmon v. Brown, 22 Mo. 140, is cited by respondents in support of their position, but on examination we find that the complaint there was about a defective notice. The court held

that the notice was for the benefit of the property owner and not the original contractor. In that case it was only the contractor who was complaining of the defect and not the property owner. The owner was not objecting to the form of the service of the notice. That case simply holds that one who is not interested in a defect and whose rights are not affected cannot complain. The opinion falls far short of holding that had the property owner made the same objection he would have received the same ruling. It does, however, hold that as against the property owner the notice is ''manifestly essential to create a lien.''

What is said in the case of Rumsey Mfg. Co. v. Baker, 35 Mo. App. 217, was with reference to setting aside a judgment rendered at a former term of the circuit court. The question presented was whether at a subsequent term it was error to refuse to set aside a judgment rendered at a former term on a motion filed at the subsequent term setting up the fact that the court was without jurisdiction to render judgment because of defective service and a defective statement in the mechanic's lien statement. No such question is presented in our case.

We cannot assent to the proposition that where a defendant specifies a wrong objection to offered evidence or makes no objection at all, he thereby admits the *legal sufficiency* of the evidence offered to establish that which requires probative evidence and waives the right to point out the failure of the plaintiff in making a case, where the case is tried before the court without declarations of law, judgment is rendered, and a motion for a new trial assigns as error the ground that ''the judgment is against the law as applied to the evidence in this case.''

The very purpose of a waiver is to prevent a forfeiture of a right. (40 Cyc. 254.) But a right which does not exist is not created by a waiver. If plaintiffs failed to file such a statement as is required by stat-

ute giving them a right of action, their right never existed and cannot be brought into being by a waiver under the facts of this case.

Does the account filed set out in the statement meet the requirements of "a just and true account?" As to the amount claimed for extras there can be no doubt as to its failure; such items are in no way designated, itemized or shown except in the lump sum together with the balance claimed under the contract. As between an original contractor and the landowner the statement would not in any sense contain a just and true account for the demand for such extras, and certainly not in the case of a subcontractor. The authorities are now practically agreed that as between the landowner and an original contractor, where there is a contract calling for labor and material and the price is fixed at a lump sum, a statement filed showing the demand claimed for lienable items, setting forth the character of the items, for the price fixed in the contract, followed by the credits due thereon, is a sufficient account to meet the requirements of law, this, because the landowner knows what his contract calls for, he knows the terms thereof, and therefore is advised when he sees the lien statement showing the items which were to be furnished under the contract. It seems that the same doctrine has been applied as between the landowner and a subcontractor. This we take to be settled by the following cases: Mahan v. Brinnell, 94 Mo. App. 165, 67 S. W. 930; Mitchell Planing Mill Co. v. Allison, 138 Mo. 50, 40 S. W. 118; National Press Brick Co. v. Construction Co., 177 Mo. App. 573, 160 S. W. 1073; Hilliker v. Francisco, 65 Mo. 598. In the case last cited we notice that the court called attention to the fact that the owner knew of the contract between the subcontractor and the original contractor. However, in the three preceding cases that element is not mentioned nor made a prerequisite. And this again convinces us of the correctness of the trial

court's action in admitting the lien statement hereinbefore discussed. That statement when presented was competent provided it was followed up with a showing that the items contained therein were furnished under a contract. And had a specific objection been made to the lien account when it was offered the court would have properly overruled such specific .objection because the court could not at that time tell whether the plaintiffs were going to follow up the offer of the lien statement and show that they furnished the labor and material under a contract. The plaintiffs did follow up the offer of the lien statement and showed that a part of the amount claimed was furnished under a contract, thereby making the lien statement offered under the law a just and true account as to the amount furnished under the contract, but they failed to show that the extras were furnished under any contract whatever and therefore their case failed as to the amount claimed for extras. We hold that the mistake in the name designated in the notice and lien was not fatal to the right to enforce the lien, that the account and statement is not in compliance with the statute as to extras furnished, and that the account and statement for items due under the subcontract complies with the law as to the amount due and unpaid thereunder. The judgment is accordingly reversed and the cause remanded with directions to the circuit court to enter a judgment for the plaintiffs against Watts in the sum of $818.75 and make such judgment a lien against the real estate and improvements described belonging to the defendant, The Ball & Gunning Milling Company, in the sum of $418.75 together with the interest on the last-mentioned amount from the date of the filing of the lien in the office of the circuit clerk. *Sturgis, J.,* concurs. *Robertson, P. J.,* dissents.

## DISSENTING OPINION.

ROBERTSON, P. J.—The testimony in the trial of this case was very brief and is due, I think, to the fact that only two defenses were relied upon. One was that the notice is defective because it names individuals and not the corporation; the other is, that the lien statement is defective for the same reason. I think the record sustains this assertion of the defenses.

The majority opinion announces the correct conclusions and I think properly declares the law until the conclusion is reached, as announced in the latter part of the opinion, that the plaintiffs "failed to show that the extras were furnished under any contract whatever and therefor their case failed as to the amount claimed for extras." The fallacy of this conclusion is shown, in my judgment, from the record wherein one of the plaintiffs testified: "Q. You may state to the court whether or not you had a contract with Watts and Stone for doing any work for Ball and Gunning Milling Company in Webb City, Mo.? A. Yes, sir: We had a contract to that effect. Q. Was your contract in writing or verbal? A. It was in writing." The witness then identified the contract which refers to the plans for dimensions, depth, etc., of foundation, testified as to credits and then proceeded: "Q. What was the balance due after allowing all just credits and set-offs? A. $818.75. Q. Is the character of the work you did the work specified in this contract? A. Yes, sir." Upon cross-examination this witness testified that the total amount "of the original contract was $7200." This was not sufficient, after allowing credits, to make the full balance claimed, but "The rest of it was for work that Mr. Stone had the plans changed and put in." The witness continued: "Q. Had the plans changed afterward? A. He ordered heavier foundations and deeper excavations and so on, made the difference. Q. The work was actually put in on the

building? A. Yes, sir. The Court: Let me ask for information. Is this account all for labor or is any of it for material? Mr. Gray: It is for material and labor as shown in the account. The Court: And the material you have in that account went on that elevator? A. Yes, sir. The Court: The work you have charged for was work done on that elevator? A. Yes, sir." Then the trial judge remarked that he supposed there was no question about the appellant owning the elevator, to which the attorney for respondent replied: "No, I understand the defense relied on in this case is that this notice of filing this claim which was given to Gunning and described as Ball and Gunning when it was the Ball and Gunning Milling Company, I understand from Mr. Sheppard that was the real defense in the case." The plaintiffs then offered in evidence the notice to which the defendant objected for the reason of the discrepancy in the names. The trial court then asked: "Is that the defense in this case?" To which the attorney for the defendant replied: "That and the lien statement." Then when the lien statement was offered in evidence the only objection made was as to the discrepancy in the names as above noticed. In my judgment the points upon which the majority opinion forces the plaintiffs to surrender a portion of their claim was never thought of in behalf of the defendant in the trial court. Surely nothing was said or done to indicate to the plaintiffs or to the trial court such defenses. This case I believe presents an instance where the parties in effect conceded that the facts were true, and needed no proof, which the majority opinion holds the plaintiffs failed to show. I think the defendant assumed a position which justified the plaintiffs and the trial court in assuming that all other facts, than the question of the sufficiency of the notice and the lien statement on account of the variation in the names, were conceded, and this court in now recogniz-

ing the right of defendant to thus charge its position I deem to be in conflict with City of St. Louis v. St. Louis, Iron Mt. & S. Ry. Co., 248 Mo. 10, 25, 154 S. W. 55.

We may, however, for the purposes of a decision in this case, assume that the defendant did not concede that the allegations of the lien statement were proven, yet I think the testimony is sufficient to justify the conclusion that the plaintiffs did follow up the lien statement and show that all of the amount claimed therein was furnished under a contract. The lien statement alleges the date when the work "begun on contract of building and constructing eight concrete wheat tanks to be built and constructed of sand, chat cement and reinforced with iron rods and wire. . . . That the price of the cement, sand, chat, iron bars and wire, and the labor performed in the construction of said eight wheat tanks was $7600.35." This means that such is the value of these items in the tanks. McDermott v. Class, 104 Mo. 14, 23, 15 S. W. 995. The testimony which I think supports this allegation and the lien statement has been quoted above wherein one of the plaintiffs testified that they did the work provided for in the contract. It is true the witness testifies that the *original contract* was changed by changing the plans and making the foundations deeper, but this yet allowed the *changed contract* to stand as the final and only contract for the performance of which the plaintiffs are entitled to a lien. This is the contract alleged in the lien statement and the one about which the witness testified. [National Press Brick Co. v. W. H. Lester Construction Co., 177 Mo. App. 573, 160 S. W. 1027.] I also deem the majority opinion in conflict with the opinion in that case. The inference is justifiable, and in fact no other conclusion should be reached, I think, that the contract to which reference is made in the lien statement is the contract after the plans had been changed. When the contract was changed it was yet, as changed, the contract, and the

only contract, under which the improvement was made. The proof sustains this charge. I think that the defendant and the trial court recognize this as correct. There is no question of "extras" involved in this case, as I see it. The plaintiff offered in evidence the written contract which calls for the plans the plaintiff testified were changed, in answer to a question propounded to him in behalf of the defendant.

The judgment, I am firmly convinced, should be affirmed.