JOSSMAN *v.* RICE.

1. MECHANICS' LIENS—DESCRIPTION OF PREMISES—SUFFICIENCY.
    A mechanic's lien may attach to a building erected under a
    contract describing the premises merely as "ground situated"
    in a given village, where the building was constructed upon
    the only land owned by the parties in the village named.

2. SAME—HOMESTEAD—CONTRACT SIGNED BY HUSBAND ALONE.
    Under article 16, § 2, of the State Constitution, making the
    wife's signature requisite to a valid alienation of the home-
    stead interest, a wife's homestead rights in land owned by
    herself and husband jointly cannot be cut off by a mechanic's
    lien acquired under a contract signed by the husband alone,
    notwithstanding the contract was entered into with her
    knowledge and consent, and the lien law (Act No. 179, Pub.
    Acts 1891, § 2) provides that, where improvements are made
    under such circumstances on land so held, the lien shall attach
    the same as if the contract were signed by the wife.

3. SAME—PRIORITIES—SALE AND REMOVAL OF BUILDING.
    Section 9, subd. 4, of the mechanic's lien law (Act No. 179,
    Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893),
    which provides that a lien shall attach to a building for which
    material or labor is furnished in preference to any prior title
    to the land on which the building is erected, and that when
    the building is an original and independent one, commenced
    since the attaching of the prior title, its separate sale and
    removal may be ordered by the court,—confers upon the
    court authority to permit a contractor or material man to
    sell in satisfaction of his lien, and remove, an original build-
    ing, where no lien could attach to the land because of a
    homestead interest in the wife of the person who alone signed
    the contract for the erection of the building.

Appeal from Oakland; Smith, J. Submitted June 7,
1899. Decided September 19, 1899.

Bill by Joseph A. Jossman against Cassius E. Rice,
Wilhelmina Rice, Olney A. Slater, and others, to enforce

a mechanic's lien. From a decree for complainant and defendant Slater, defendants Rice appeal. Modified.

*Frank E. Jenkins* and *John H. Patterson*, for complainant.

*George O. Kinsman* and *Dwight N. Lowell* (*Baldwin, Jacokes & Moore*, of counsel), for defendants Rice.

*Michael F. Lillis* and *Everett W. Scott*, for defendant Slater.

LONG, J. This cause was commenced by bill in equity to enforce a mechanic's lien under Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893. The complainant resides in Oxford, Oakland county, this State, and claims for materials furnished to the contractors in the erection of a building for the defendants Rice. The materials claimed for were furnished by Jossman & Allen and by William J. Tunstead, but those parties assigned their claims to the complainant. It appears that Slater & French were the original contractors. French assigned his interest in the claim to Slater, who filed a statement of lien for that claim. The defendants appeared in the case. Defendants Rice, who are husband and wife, answered the bill. Defendant Slater filed an answer in the nature of a cross-bill, asking affirmative relief against the defendants Rice. At the time the contract was entered into for the erection of the building, the defendants Rice resided in Lenox, Macomb county. There is no question raised over the proceedings to bring the case to an issue.

It appears that in the spring of 1896 Cassius E. Rice purchased for $300 a lot in the village of Oxford, taking the title in himself and wife jointly. They then lived at Lenox, Macomb county. At that time the lot purchased was vacant, and was situated on the principal business street of the village, surrounded by stores. Architects prepared plans, specifications, and drawings, and a con-

tract, ready for signing, for the erection of a building on said lot. The contract, plans, and specifications provided for a two-story building, with a solid brick wall and basement under the entire building, with solid stone walls extending to the bottom of the basement, and an ornamental front; the building to be 21 feet and six inches in width; first floor finished for store purposes, and second floor for offices and living rooms. The architects also furnished another plan, to be used if something cheaper was wanted. Defendant Slater negotiated with Cassius E. Rice relative to the erection of the proposed building. It was found by Rice that to erect the building under the original plans and specifications, as drawn by the architects, would cost too much, and therefore he and Slater agreed upon new plans and specifications. Changes were made from a solid brick wall to a veneered brick wall. The height of the building was made less, the ornamental work on the front was done away with, the excavation for cellar lessened, and many other changes were made. A new contract was drawn, which shows the contract price to be $2,128, but the parties agreed that the price should be fixed at $1,928. This contract was signed July 14, 1896, by Slater and defendant Cassius E. Rice. Slater was paid on the contract by Rice the sum of $278. The balance remains unpaid, which, with some extras and interest added, made the amount still unpaid on July 25, 1898, the sum of $1,851.30. Defendants Rice deny owing anything on the contract, claiming that the contract has not been complied with. The complainant's claim is made up of his own and Allen's account of $272.50, and William J. Tunstead's account of $132.88, which amounted, with interest added, on July 25, 1898, to $450.27.

The defendants Rice, in their answer, allege that the building was not constructed in conformity to the terms and conditions of the contract, plans, and specifications; that, on account of defective construction, the contract price for the payment thereof never became due; that, because of the defects in the construction by the con-

tractors, the architect refused to give his certificate that
the building was constructed substantially in accordance
with the contract, plans, and specifications, and that the
payment therefor was due to the contractors.    It is also
objected by defendants Rice that the contract contains no
description of the land on which the building was to be
erected; that, by reason of this omission, no lien could be
created under the lien law; that it is as essential that a
description of the land be given in the contract as it is that
a mortgage on land should contain the description; that
all the description contained in the contract is that:

"The said parties of the second part do hereby  *  ·*  *
promise and agree    *    *    *    well and sufficiently to
erect, finish, and deliver, in a true, perfect, and thoroughly
workmanlike manner, the brick store and flat building
for the party of the first part, on ground situated in
the village of Oxford, county of Oakland, and State of
Michigan."

The defendants Rice, in their answer, deny that the
contract was signed by Wilhelmina Rice, or with her
knowledge and consent.    They claim that the lot was
purchased by them jointly in the spring of 1896, and the
deed taken as joint tenants; that the land was purchased
for the purpose of erecting this building, with a dwelling
over the store for their permanent home; that they had no
other home, and never had had a home before this since
they were married.

1. There was evidence given by the complainant and
defendant Slater that the completed building was in sub-
stantial compliance with the contract; that, as completed,
it was worth at least $2,000.    The contract, plans, and
specifications adopted varied greatly from the originals
drawn by the architects in the first instance.    The last
plans and specifications were drawn by Slater and de-
fendant Rice, and it was from these that the contractors
worked.    These were apparently faulty, and changes
were made in them, but with the consent of Mr. Rice.
We are satisfied from the evidence that the court below

121 MICH.—18.

was not in error in finding that the contract as last drawn was substantially complied with.

2. We think there is no force in the claim that no lien could attach by reason of the insufficiency of description of the premises in the contract. The land upon which the building was constructed was the only land owned by Mr. and Mrs. Rice in Oxford, Oakland county. The building, it is conceded, was constructed upon the identical land contemplated by the contract, and the claims of liens filed described those lands. It was not necessary, in the bill, to ask a reformation of the contract by inserting the proper description of the land therein. All parties acquiesced in the construction of the building there, and there is no claim of mistake of the place where it was to be constructed. It is not the case cited by counsel for defendants, of *Burkhart* v. *Reisig,* 24 Ill. 529. There an engine was to be built and set up in the city of Chicago. It was not contemplated by the parties that the engine should be attached to any particular piece of land, and no arrangement of that kind was made, while in the present case this building was to attach to and become a part of this particular land, as a part and parcel of the real estate of defendants Rice.

3. The principal question argued and insisted upon here to defeat the liens is in reference to the homestead interest of Mrs. Rice. She did not sign the contract, but it appears from the testimony of Mr. Slater that she knew of the making of a contract for the erection of the building, and she herself testified:

"My husband and I talked over the building we would build, and he drew some plans on paper and showed me. * * * Whatever he did in the matter had my sanction."

She was present when Slater was there and the contract was talked over. She knew the building was to be placed on this lot, and her husband testified that he told her he had signed the contract with Mr. Slater. Section 2 of the lien law of 1891 provides that:

"If any such services are performed or materials are furnished upon lands belonging to any married woman, with her knowledge and consent, in pursuance of a contract with the husband of such married woman, the person furnishing such labor or materials shall have a lien upon such property the same as if such contract had been made with such married woman. And in case the title to such lands upon which improvements are made is held by husband and wife jointly, the lien given by this act shall attach to such lands and improvements, if the improvements be made in pursuance of a contract with both of them, or in pursuance of a contract with one of them by and with the knowledge and consent of the other."

We think the testimony fairly shows that the contract was made with the knowledge and consent of Mrs. Rice, within the meaning of this statute.

But counsel for defendants Rice contend that this was a homestead, and therefore protected from levy and sale by section 2, art. 16, of the Constitution of this State, and that the lien statute above referred to can have no effect to deprive the wife of her homestead interest, as she did not sign the contract; that, the parties having purchased this land with the intention of making it their homestead, their homestead rights attached. Counsel cite the following cases in which it is claimed that such a rule is laid down: In *Reske* v. *Reske*, 51 Mich. 541 (47 Am. Rep. 594), it appeared that a bill was filed to protect a homestead right, and to enjoin a threatened sale on execution. The complainant, a single man at the time, purchased the lot, intending to make it a homestead. He was anticipating marriage, and shortly after the purchase was married. The parties commenced improving the property. They built a barn and shed, dug a well, and kept stock on the place. In the spring of 1881 they talked with a builder about building a house. The cost of the house was such that they delayed for a time about building, but all the money they earned was put into improvements on the lot. It was towards the end of 1882 before they were able to put up a house. In November, 1882, an execution was levied. It was said by the court:

" The lot, as has been said, was procured for the purposes of a home; and complainant, aided by the industry and frugality of his wife, was proceeding to make it such as rapidly as their limited means would permit. They inclosed it, they had their domestic animals upon it, they came to live in the immediate vicinity, they made a well, and they put up outbuildings. Everything but the dwelling proper had been erected before the levy was made, and complainant was bargaining with a builder for a house. * * * They did not as yet sleep upon it or take their meals upon it, and, probably, if they had done this in some of the buildings already constructed, their right to claim a homestead would not have been disputed."

This was held to be a homestead in fact.

In *Deville* v. *Widoe*, 64 Mich. 593 (8 Am. St. Rep. 852), it was said:

"A city lot purchased with the intention of making it a homestead for the purchaser and his family will be exempt from levy and sale on execution from the time of purchase, even though unimproved and without a dwelling thereon, if the purchaser incloses it and uses and occupies it with the constant purpose of making it his home, and uses the proceeds thereof, and such means as he can procure, within a reasonable time, to erect a house thereon for his family, provided it does not exceed in quantity and value the constitutional limit."

The case of *Mills* v. *Hobbs*, 76 Mich. 122, is very similar to the present case. The premises were purchased by one Nettie Hobbs, with the intention of occupying them as a homestead with her husband. The lot was unimproved and vacant. In the spring of 1888 Mrs. Hobbs caused some shade trees to be planted in front along the street line. In August she contracted with one McCartney for the erection of a dwelling house on the lot. McCartney sublet part of the contract verbally to the plaintiffs, who were masons by trade. The contract with McCartney was entered into by Mrs. Hobbs through her husband. The plaintiffs completed the work as subcontractors, and subsequently filed their claim of lien within the time provided by the lien law. The premises were

held to be the homestead of Mrs. Hobbs, and the lienors, it was said, had no claim under the statute. The court said:

"It is the fact of it being a homestead or not that determines the right of lien. If the plaintiffs in this suit entered into the contract with McCartney, relying upon their right of lien instead of the personal responsibility of McCartney, it was open to them to require a contract in writing before performing any labor or furnishing any material; and, neglecting that, they have no lien under the statute."

Under these cases, it is apparent that the defendants Rice were entitled to claim a homestead in these premises. The very contract entered into with Slater shows that a part of the building was to be occupied as a dwelling by Rice and his wife. It was their intention to make it a homestead, and Slater must have so understood at the time, if he read the contract. He did not obtain the wife's signature to the contract. The statute cited cannot be held valid to cut off the homestead rights of the wife in the land. In order to cut off her rights, she must have signed the contract. While, perhaps, the statute is broad enough to cut off such rights if the contract was entered into with her knowledge and consent, yet the homestead exemption is provided for by the Constitution, and it is only by some promise in writing signed by her that her homestead right can be interfered with.

But subdivision 4 of section 9 of the lien law of 1891, as amended, provides, however, that:

"The liens for such labor or materials furnished, including those for additions, repairs, and betterments, shall attach to the building * * * for which they are furnished or done, in preference to any prior title, claim, lien, incumbrance, or mortgage to or upon the land upon which such building * * * belongs or is put. If such materials were furnished or labor performed in the erection or construction of an original or independent building, * * * commenced since the attaching or execution of such prior title, * * * the court may, in its discretion, order and direct such building * * * to be separately

sold under its decree, and the purchaser may remove the same within such reasonable time as the court may fix; but if, in the discretion of the court, it should not be separately sold, the court shall take an account and ascertain the separate values of the land and the building,  *  *  * and distribute the proceeds of the sale so as to secure to the prior title  *  *  *  priority upon the land, and to the mechanic's lien priority upon the building.  *  *  *  If the material furnished or labor performed be for  *  *  * betterments,  *  *  *  the court shall take an account of the value before such materials were furnished or labor performed, and the enhanced value caused by such  *  *  * betterments, and, upon the sale of the premises, distribute the proceeds of sale so as, to secure to the prior title  *  *  * priority upon the land and improvements to the amount° as they existed prior to the commencement of the improvements, and to the lien priority upon the enhanced value caused by such  *  *  *  betterments."

These provisions of the statute apply with great force to such a case as the present.    Mrs. Rice has a title which is not affected by the contract made with the husband.    The building is an original one erected by the contractor. Under this subdivision, his lien attaches to the building, though it cannot affect the title of Mrs. Rice to the land itself.    The case will be remanded to the court below to take an account of the value of the land without the building, and also the enhanced value with the building thereon.    While no sale can be made of Mrs. Rice's homestead, yet the court has power to permit the contractor and material men to remove the building therefrom, and thus dispose of it.

The complainant will recover costs of the court below against defendants Rice.    Neither party will recover costs of this court.

The other Justices concurred.