HOLLAND FURNACE CO. *v.* BODELL.

MECHANICS' LIENS—FIXTURES—CONTRACT FOR FURNACE—ESTATES BY ENTIRETIES—VALIDITY OF WIFE'S SIGNATURE.

In a suit by a furnace company to enforce a mechanic's lien for the installation of a furnace in a house owned by defendants by the entireties, evidence that plaintiff

induced the wife to sign the contract, which was signed by the husband and which he had attempted to cancel, by means of threats and false representations that the contract signed by the husband alone was enforceable, that plaintiff at the time knew that defendants had signed a valid contract for another furnace, and that plaintiff's furnace was never properly connected up because another furnace was already installed, *held*, to justify the dismissal of the bill.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 12, 1921. (Docket No. 71.) Decided July 19, 1921.

Bill by the Holland Furnace Company against John Bodell and another to enforce a mechanic's lien. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Corwin & Norcross* and *Robinson & Den Herder*, for plaintiff.

*Horace T. Barnaby*, for defendants.

MOORE, J. The plaintiff on July 10, 1919, obtained a contract signed by John Bodell, for the installation of a furnace in a house owned by the defendants by the entireties. Mrs. Bodell's signature was obtained to the contract the 7th day of August, 1919. Plaintiff began the installation of the furnace on August 8, 1919. On that date they were ready to proceed with the completion of the contract. They claim defendants stopped them from completing the installation. On March 19, 1920, a bill of complaint was filed by the plaintiff to establish a lien on the *quantum meruit* basis for the materials actually furnished and the labor actually performed up to the time it claims performance was prevented by the action of the defendants.

After hearing all the testimony the trial judge expressed himself as follows:

"In this case I am not satisfied that the furnace in controversy was ever actually and in good faith attached to the property of defendants in such a substantial manner as to give the plaintiff a right to a lien under the mechanic's lien law. The manner in which the contract was secured leads me to believe the plaintiff's remedy is in a court of law and not in a court of equity. The bill of complaint will, therefore, be dismissed, with costs."

A decree was made dismissing the bill of complaint. The case is brought here by appeal.

It was the claim of John Bodell that on July 10, 1919, he signed the contract with the express understanding that he might cancel it, and that the next evening he notified the people at the office of the plaintiff to call the deal off, and that on July 12th he notified Mr. Becker personally to cancel the contract. Mr. Becker, the manager, does not agree with Mr. Bodell that he was given the privilege to cancel the contract. Mrs. Bodell was away from home at the time John Bodell signed the contract and did not return until the 17th day of July, when John Bodell told her of his agreement with the Holland Furnace Company and his signing of a contract conditionally and of his canceling the contract pursuant to the privilege reserved by said condition.

On July 19th a representative of the Home Furnace Company came to the home of said defendants and at that time a contract was signed by them with the Home Furnace Company for the installation of a furnace. Later in July a representative of the plaintiff had an interview with the defendants. Under date of August 2, 1919, the plaintiff sent a letter to defendant John Bodell stating that:

"We have decided to prove this matter and feel that we are entitled to legitimate consideration. We there-

fore wish to hereby advise you of our stand and intentions so that you may, if you desire make proper amends and thereby save yourselves additional expense."

Soon after the receipt of this letter the defendants went to the office of the Holland Furnace Company because of the letter which they interpreted to constitute a threat. Up to the time of this visit on August 7, 1919, defendant Gertrude G. Bodell had not signed any contract with the Holland Furnace Company, though she had signed one with the Home Furnace Company. Statements were made by the manager of the plaintiff company at the interview of August 7th which resulted in Mrs. Bodell signing the contract which her husband had before that signed. It was understood that the furnace was not to be installed at once, but the next day the furnace was brought to defendants' house and its installation begun. The same day the Home Furnace Company brought a furnace to the house of defendants and that was fully installed.

It was the claim of the defendants that Mrs. Bodell's signature was obtained by means of statements that were not true, and that were a fraud upon her. The testimony of the parties was in sharp conflict. The testimony of the plaintiff's manager has some significant passages in it. We quote:

"(Witness continuing) I told Mr. and Mrs. Bodell they were liable on Mr. Bodell's contract without her signature. I thought the contract was perfectly good and enforceable without Mrs. Bodell's signature. * * * Mr. and Mrs. Bodell were at my office, possibly an hour on August 7th. I think it was probably toward the close of that hour that Mrs. Bodell signed the contract. I told them they were liable under their contract with us—

"Q. Mr. Bodell's contract?
"A. Yes, sir.
"Q. Without her signature?

"*A.* Yes, sir.  *  *  *   I volunteered to prepare the notice, told them they should write and suggested writing them.    (To the Home Furnace people.)

"*Q.* In other words they were dubious about signing this contract, about getting themselves in trouble.

"*A.* Well, they were in trouble, already, and I was getting them out of their trouble.

"*Q.* By getting Mrs. Bodell to sign your contract?

"*A.* She came in with Mr. Bodell and I naturally asked her to sign it.   We usually do."

We have already called attention to the letter of August 2d, containing the following:

"Now, we find by looking up the purchaser of your property that you have not treated us fairly and go so far as to say that you did not make this statement to the writer.   We have decided to prove this matter and feel that we are entitled to legitimate consideration.   We therefore wish to hereby advise you of our stand and intentions so that you may, if you desire, make proper amends and thereby save yourselves additional expense."

And that it was the receipt of this letter that caused Mrs. Bodell to have the interview in the office of the manager.

The contract contains a provision as follows:

"It is further understood that the furnace shall remain personal property as well after it is placed in the building as before, and that the title to the furnace remains in us until final payment is made in cash, including all accepted bills, with the right to remove the same in default of payment."

At the close of the manager's testimony the chancellor asked him some questions; we quote:

"*By the court:*   *Q.* Your contract was for $205?

"*A.* Yes, sir.

"*Q.* You never completed the work?

"*A.* No, sir.

"*Q.* Why didn't you complete the work?

"*A.* Why, the installers were sent there to complete it, but they were not permitted to go ahead.

"*Q*. And what became of your furnace?

"*A*. It is still there in the basement the last I saw of it.     It was installed, but it was shoved to one side and what has become of it since I don't know.

"*Q*. It was never installed sufficiently to enable the parties to use it?

"*A*. No, sir.

"*Q*. You only got part way on the installation and then they refused to permit you to proceed?

"*A*. That is correct, no work has been performed since.

"*Q*. Your furnace has been put aside and another furnace, a Home furnace has been installed in its stead?

"*A*. Yes, sir.

"*Q*. And that was done immediately after the partial installation of your furnace?

"*A*. Yes, sir.

"*Q*. And you are holding them to their contract on a *quantum meruit* basis?

"*A*. Yes, sir.

"*Q*. That is, as much as you put into the furnace you are entitled to get back; that is your theory?

"*A*. Yes, sir."

It goes without saying that the manager of the plaintiff company knew defendants needed but one furnace.     He also knew they had made a contract signed by both of them for the installation of a furnace by a competitor before he obtained the signature of Mrs. Bodell.     To obtain that signature he told defendants that the contract signed by Mr. Bodell alone could be enforced.     He certainly ought to have known this was not true as to Mrs. Bodell.     See *Jossman* v. *Rice*, 121 Mich. 270; *Hall* v. *Erkfitz*, 125 Mich. 332; *Bauer* v. *Long*, 147 Mich. 351 (11 Ann. Cas. 86).

We agree with the conclusion reached by the chancellor.

The decree is affirmed, with costs to the defendants.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.