## KEYS et al. v. TARRANT COUNTY BUILDING & LOAN ASS'N. (No. 362.)

(Court of Civil Appeals of Texas. Waco. May 13, 1926. Rehearing Denied July 1, 1926.)

**1. Appeal and error ⊕⇒931(3).**

Where finding of trial court is general, appellate court must consider every issuable fact to have been found in favor of appellee if there is any evidence in support thereof.

**2. Appeal and error ⊕⇒931(1).**

In passing on sufficiency of evidence to sustain finding of trial court, appellate court must view evidence in light most favorable to finding.

**3. Husband and wife ⊕⇒249.**

Property acquired by wife during existence of marriage relation for valuable consideration

paid and to be paid in future is community property under Complete Tex. St. 1920, art. 4622.

**4. Homestead ⊚⟩95.**

Erection of house upon vacant lot does not impress it with homestead character as against lien given to secure prior loan for construction of house.

**5. Husband and wife ⊚⟩267(2, 5).**

Wife abandoned by husband and left without home or means of support may sell and incumber community property to provide necessities for herself and family without consent or joinder of husband.

**6. Acknowledgment ⊚⟩25.**

Where abandoned wife conveys her separate or community property without consent or joinder of husband, acknowledgment as feme sole is sufficient.

**7. Husband and wife ⊚⟩267(2).**

·Conveyance of community property by abandoned wife is not affected by various amendments to Rev. St. 1911, art. 4621, applying only to incumbrance or conveyance of separate property.

**8. Husband and wife ⊚⟩267(9)—Abandoned wife purchasing lot and deeding it as·feme sole to son for erection of house for her benefit, as well as husband, held estopped to deny validity of lien for money advanced to erect house or to claim any interest in land as distinguished from house.**

Where abandoned wife as feme sole purchased property, deeded it to son, and participated in effort to secure erection of house for her benefit knowing that money therefor was advanced upon faith of lien on both house and lot, both wife and her husband *held* estopped to dispute validity of lien or claim any right in lot as distinguished from house.

**9. Infants ⊚⟩58(2)—Infant having secured loan for erection of house on land in his name could not repudiate debt and disclaim interest in property without offering restitution.**

Where there was circumstantial representation that infant securing loan for erection of house on land in his name was of lawful age, he could not upon majority repudiate debt without offering restitution, and disclaim interest in property to aid grantor in suit to cancel deed and quiet title, without payment for improvement.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Suit by the Tarrant County Building & Loan Association against Elmer A. Keys and others. · Judgment for plaintiff, and defendants appeal. Affirmed.

Houtchens & Clark, of Fort Worth, for appellants.

Samuels & Brown, of Fort Worth, for appellee.

GALLAGHER, C. J. This appeal is prosecuted by Elmer A. Keys, Mrs. Lillie E. Keys, and her husband, J. E. Keys, who seek to re-

verse a judgment of the district court in favor of Tarrant County Building & Loan Association, awarding a recovery in favor of said association against Elmer A. Keys for the sum of $2,349.80 and against all said appellants for a foreclosure of lien on a certain lot of land with the improvements thereon. The case was tried before the court. No findings of fact were filed and none requested. There is evidence that said Lillie E. Keys and said J. E. Keys are husband and wife, and that they are the parents of said Elmer A. Keys; that some 12 or more years ago said Keys abandoned his wife and family and has continuously since lived separate and apart from them. After such abandonment the family consisted of Mrs. Keys and five minor children, the oldest, a girl, being about 14 years of age at that time. Mrs. Keys assumed the responsibility of maintaining herself and children. She and such of her children as were old enough worked for wages. The wages of the children were turned over to ·her and used in supporting the family. There is some evidence that the husband made small contributions from time to time. His testimony concerning such contributions is in some things contradictory and in general extremely indefinite, and such that the trial court in his discretion was justified in according but little, if any, weight. Viewing his evidence in the most favorable light, such contributions were made on rare occasions only and in comparatively trivial amounts, and nearly always to his baby girl. The testimony was wholly insufficient to show an attempt on his part to make any material provision for the support of his children, much less the support of both them and his deserted wife. Some time in May, 1920, Mrs. Keys bought in her own name the lot of land involved in this suit. The consideration recited in the deed was $100 cash and a vendor's lien note for $100, payable in monthly ·installments of $5 each. Said deed further recited that Mrs. Keys was a widow. She did not consult her husband about the purchase of said land, and he had nothing to do with the transaction, though he claims that he sent $30 to his baby girl from Abilene about that time, and that he knew that said money would be used in making the cash payment on said land, and that he was willing for it to be so applied. How he knew such fact was not disclosed.

The lot remained vacant until August, 1922. Mrs. Keys and three of her children still residing with her were then living in rented rooms. At that time a contractor named Middleton, who was a neighbor and friend of the family, discussed with Mrs. Keys and Elmer the matter of building a house on said lot. They agreed on the kind of a house to be built, and that Middleton should build it. It seems that Middleton

---

undertook to aid in securing a loan to finance such building, and on August 25, 1922, Middleton and Elmer approached the appellee with reference to making a loan to enable them to build said house. Elmer at that time applied to appellee for a loan of $2,800 to be used for such purpose. In this connection it was stated to appellee that the lot was owned by Mrs. Keys, but that Elmer and his brother would pay for the house, and that Elmer and his mother would occupy it. Some one, probably appellee's loan agent, suggested that inasmuch as Elmer was borrowing the money to build the house, that Mrs. Keys ought to convey the lot to him. Elmer made an affidavit before appellee's loan agent as a notary public that he was a single man, that he had never been married, that Mrs. Keys was then a widow, and that she was a widow when said lot was purchased by her. This affidavit was made several days before the formal application and apparently at the inception of the negotiations for the loan. On the next day after the making of said application Mrs. Keys made a deed conveying said lot to Elmer, and acknowledged the same as a feme sole. Elmer's application was accepted for the sum of $1,800, and by common consent the Exchange State Bank advanced the money to build the house and took a deed of trust on the lot from Elmer to secure the same. Immediately on completion of the house appellee, as was contemplated by all the parties from the beginning, took a note from Elmer for $1,800 and a deed of trust from him on said lot to secure such note. Appellee then advanced said sum of money, and the same was used to repay the money advanced by the Exchange State Bank. There is nothing in the record tending to show that Mrs. Keys intended by said transaction to defeat the rights and interest of her husband in said property. The evidence is sharply conflicting, but the trial court would have been justified in finding therefrom that appellee had no notice of the fact that Mrs. Keys was a married woman without a divorce from her husband, that it relied on the recital in the deed and the affidavit of Elmer and believed that she was a widow at the time of the purchase of said lot and at the time of said conveyance, and that it would not have made the loan but for such reliance and belief. The trial court would also have been justified in finding from the evidence that Mrs. Keys and Elmer were acting together in the matter of securing said loan and building said house, and that he was authorized to represent her and act for her in the premises. Elmer paid altogether the sum of $80 on said loan. About a year after it was made appellee declared the whole amount thereof due under the terms of the note and deed of trust.

Elmer Keys was at the time of the transaction a minor. No question concerning his age seems to have been raised. He represented himself as a single man, employed as a conductor by the traction company, and stated that he had been employed by said company for several years. Appellee's loan agent, who conducted all negotiations, testified that there was nothing reasonably calculated to raise any question as to Elmer's being under age, and that he never suspected that he had not attained his majority, but on the other hand considered from all the circumstances that he was of age and capable of transacting his own business. Elmer became of age during the pendency of this suit. He was married, and his wife was living in the house at the time of the trial. He testified that on becoming of age he repudiated the debt. He further declared in his testimony that he claimed no interest in said house or premises, but such disclaimer seems to have been in the interest of his mother, since he joined in the prayer asking that the deed of trust be canceled and removed as a cloud and that his parents be quieted in the title to said property.

### Opinion.

[1, 2] The finding in favor of appellee herein being general, every issuable fact must be considered as found in its favor if there is any evidence to support such finding. In passing upon the sufficiency of the evidence to sustain each such finding we must view the same in the light most favorable thereto, rejecting all evidence favorable to the opposite contention and considering only the facts and circumstances which tend to sustain such finding. Hines v. Kansas City Life Ins. Co. (Tex. Civ. App.) 260 S. W. 688, 690, and authorities there cited.

[3, 4] The lot in question in this case was acquired during the existence of the marriage relation between Mrs. Lillie Keys and her husband, J. E. Keys, and for a valuable consideration paid and to be paid in the future. It was not acquired by gift, devise, or descent, and was therefore by the express terms of Article 4622, Complete Texas Statutes, 1920, community property. See, also, Routh v. Routh, 57 Tex. 589; Merrell v. Moore, 47 Tex. Civ. App. 200, 104 S. W. 514; Gutheridge v. Gutheridge (Tex. Civ. App.) 161 S. W. 892. It was vacant at the time appellant agreed to lend the money to erect the house and at the time the Exchange State Bank agreed to advance the money to erect the building and took its deed of trust to secure such advancement on the assurance that appellee would take over the loan upon the completion of the building. The erection of a house on said lot in pursuance of said arrangements did not impress it with the homestead character as against the lien given to secure said loan. Swope v. Stantzenberger, 59 Tex. 387, 390, 391; Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935, 938.

[5] Mrs. Keys, having been abandoned by her husband and left without a home and also without means of support, had a right to sell and incumber the community property to provide for the necessities of herself and her children without the consent or joinder of her husband. She was forced by reason of her husband's abandonment to perform the duties and assume the responsibility of the head of the family, and she became at the same time entitled to exercise the rights and privileges of such position. The law in such cases gives the abandoned wife a wide discretion and broad authority to use, improve, and dispose of the community property, even though it was acquired prior to such abandonment. Mrs. Keys acquired the particular lot involved on her own initiative, and the purchase money was paid largely if not entirely out of her savings from the wages of herself and her children. She had no homestead, but was living in rented rooms. This lot was doubtless acquired for the purpose of improvement and occupancy as a home when her circumstances permitted the necessary expenditure. Her conveyance to Elmer, while upon the recited consideration of love and affection, seems to have been in fact in trust and upon his promise to build a house thereon for her use and occupancy as a permanent home. We think under the facts in this case Mrs. Keys had the power and authority without the consent or joinder of her husband to convey said lot to Elmer, and to authorize him to incumber it for the purpose of building a house thereon to be used and occupied as a home by her and her minor children. Wright v. Hays, 10 Tex. 130, 135, 136, 60 Am. Dec. 200; Cheek v. Bellows, 17 Tex. 613, 618, 619, 67 Am. Dec. 686; McAfee v. Robertson, 41 Tex. 355, 358; Slator v. Neal, 64 Tex. 222, 223, 226; Ann Berta Lodge v. Leverton, 42 Tex. 18, 20; Fullerton v. Doyle, 18 Tex. 4, 12, 13; Zimpelman v. Robb, 53 Tex. 274, 281; Stewart v. Profit (Tex. Civ. App.) 146 S. W. 563, 565, par. 7 (writ refused); Hadnot v. Hicks (Tex. Civ. App.) 198 S. W. 359, 369, par. 11 (writ refused); Green v. Windham (Tex. Sup.) 278 S. W. 1101, 1102; Fermier v. Brannan, 21 Tex. Civ. App. 543, 53 S. W. 699; Queen Insurance Co. v. May (Tex. Civ. App.) 35 S. W. 829, 831; Cullers v. James, 66 Tex. 494; 497, 1 S. W. 314.

[6] Where an abandoned wife conveys either her separate or community property without the consent or joinder of her husband, she acts as a feme sole, and her acknowledgment of the conveyance as such is sufficient. Wright v. Hays, supra; Breitling v. Chester, 88 Tex. 586, 590, 32 S. W. 527; Cheek v. Bellows, 17 Tex. 613, 67 Am. Dec. 686; Fullerton v. Doyle, 18 Tex. 4, 1 C. J. p. 766, § 30.

[7] Since the lot in question in this case was community property under the express terms of the statute, we need not determine whether Mrs. Keys' right as an abandoned wife to convey or incumber the same was affected by the various amendments to article 4621, R. S. 1911, authorizing the wife on permanent abandonment by her husband to apply to the district court for authority to incumber or convey her separate lands without his joinder. Said amendments in termr apply only to the incumbrance or conveyance of the separate property of the wife, and include, in addition to abandonment, cases where the husband is insane and also where he refuses to join in the incumbrance or conveyance though continuing to live with the wife and to maintain and support her.

[8] There remains for consideration appellee's contention of estoppel as applied both to Mrs. Keys and to Elmer. Had Mrs. Keys made the affidavit that she was a widow at the time the property was purchased and at the date of the deed to Elmer, there is no question that so far as she is concerned said deed would have been valid by estoppel. Equitable Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Jones' Estate v. Neal, 44 Tex. Civ. App. 412, 98 S. W. 417, 420, 421. The lot in question was vacant at the time Mrs. Keys conveyed it to Elmer for the express purpose of enabling him to incumber it and to build a house on it for her use. She was not only consenting to the building of the house thereon, but she was also participating and co-operating in the effort to secure its erection. She necessarily knew that the money to build said house was advanced upon the faith of a lien thereon and also on said lot to secure the same. When it was completed she immediately moved into the same with her family and has continuously since occupied it with them as a home. Neither she nor her husband can claim any right to or interest in said house as distinguished from the land on which it is situated. The contract for its erection was made by Elmer, and it was paid for by money borrowed in his own name. The transaction was not consummated by giving a mechanic's lien and transferring the same to appellee, because Elmer was unmarried and was supposed to hold the legal title to the property and to have a right to secure the loan in any form he might choose. The statute on mechanic's liens declares that the lien therein provided shall attach to the house, building, or other improvement in preference to any prior lien or incumbrance on the land on which the same may be erected, and that such lien may be enforced against such house, building, or other improvement by having the same sold separately from the land, and that the purchaser shall have a right to remove the same within a reasonable time from the date of purchase. R. S. arts. 5459 and 5471. These articles have been continuously applied in appropriate cases by our courts. Summerville v. King, 98 Tex. 332, 338, 339, 83 S. W. 680, 682; Dallas Plumbing

Co. v. Harrington, 275 S. W. 190–193. There is nothing to indicate that the house could not have been sold separately and removed from the lot without any injury to the land. It is true said statute applies in terms only to mechanic's liens where the holders of prior liens are entitled to have them satisfied out of the land in preference to the lien for improvements. The principle involved, however, is so just and reasonable that we think a court of equity would in cases such as this be justified if not required to apply the same where improvements are placed on land in good faith and under a contract with and a lien given by the person having the apparent title thereto and believed at the time to be the owner thereof, even though it be discovered at some subsequent time that such apparent owner in fact had no title at all. It was so applied by the court of last resort in Kentucky in Maynard v. Columbus, 150 Ky. 817, 150 S. W. 1019, 1020, and in effect by the Supreme Court of Missouri in Sawyer & Austin Lbr. Co. v. Clark, 172 Mo. 588, 73 S. W. 137. See, also, Hall v. Bullock (Ky.) 97 S. W. 351; Smith v. St. Paul F. & M. Ins. Co., 106 Iowa, 225, 76 N. W. 676; Lane v. Snow, 66 Iowa, 544, 24 N. W. 35; Jossman v. Rice, 121 Mich. 270, 80 N. W. 25, 80 Am. St. Rep. 493; Mahon v. Surerus, 9 N. D. 57, 81 N. W. 64; Arnold v. Campbell, 3 Ind. T. 550, 64 S. W. 532; Pickens v. Plattsmouth Investment Co., 31 Neb. 585, 48 N. W. 473; Montana Lumber & Mfg. Co. v. Obelisk Mining & Concentrating Co., 15 Mont. 20, 37 P. 827; Linck v. Meikeljohn, 2 Cal. App. 506, 84 P. 309. We think under the facts in this case Mrs. Keys so far participated in the deception practiced upon appellee, in part in person and in part through Elmer, as to estop her from denying the validity of appellee's lien on the entire premises. The fraud was active, and her participation was at least in part personal. There is, however, a further reason why both she and her husband should be held estopped from denying the validity of said lien. They appeared and answered herein, claiming the entire premises, both land and improvements, against appellee's lien. The testimony showed that the land at the time of the building of the house was worth about $300, and that the house cost approximately $2,100, of which $1,800 was furnished by appellee and the remainder by a holder of a second lien, on which the testimony shows nothing was ever paid. This shows conclusively that said improvements greatly enhanced the value of the tract of land considered as a whole. Neither Keys nor his wife had contributed one cent to the erection of said house, and she had joined in inducing its erection on the credit of Elmer, and on the representation that he was invested with the title to said lot. Said house could have been removed without material damage to the lot. Neither Mrs. Keys nor her husband could disaffirm her conveyance to Elmer and have the same, together with the outstanding liens, canceled, and at the same time claim and retain said house and defeat appellee's right to subject it at least to his debt and lien. Dalton v. Rust, 22 Tex. 133, 151 et seq.; Vann v. Denson, 56 Tex. Civ. App. 220, 120 S. W. 1020, 1022 (writ refused); Texas & St. L. R. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Leon County v. Vann, 86 Tex. 707, 27 S. W. 258; Rowan v. Texas Orchard Development Co. (Tex. Civ. App.) 181 S. W. 871, 881, par. 6 (writ refused); Murphy v. Sisters of the Incarnate Word, 43 Tex. Civ. App. 638, 97 S. W. 135; Goolsby v. Manning (Tex. Civ. App.) 270 S. W. 936, 938, 939; North Texas Oil & Refining Co. v. Standard Tank Car Co. (Tex. Civ. App.) 249 S. W. 253, 256, par. 7; Lodwick Lumber Co. v. Taylor (Tex. Civ. App.) 99 S. W. 192.

[9] Appellant Elmer Keys contends that the court erred in rendering judgment against him on his note to appellee. The testimony shows that he was a minor at the time he gave said note, and there is no testimony that any inquiry concerning his age was made nor that he made any affirmative false statement with reference thereto. The substance of the testimony on this issue has been recited above. On the trial, having attained his majority, he repudiated the debt and disclaimed any interest in the property, but he did not offer to restore the house or permit appellee to remove the same free from any claim on his part. On the contrary, he joined in the prayer of his parents that the deed and liens be canceled, and that all cloud be removed and that they be quieted in the title to said property. There was at least a circumstantial representation that he was of lawful age at the time he executed said note and lien, and he could not join his parents in seeking to retain and appropriate the house and at the same time escape liability for the debt. Ferguson v. H. E. & W. T. Ry. Co., 73 Tex. 344, 348, 11 S. W. 347; Bullock v. Sprowls, 93 Tex. 188, 191, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849; Wade v. Love, 69 Tex. 522, 7 S. W. 225; Harseim v. Cohen (Tex. Civ. App.) 25 S. W. 977, 978; Kilgore v. Jordan, 17 Tex. 341, 355; First State Bank v. Edwards (Tex. Civ. App.) 245 S. W. 478; Hughes v. Hughes (Tex. Com. App.) 221 S. W. 970, 972, par. 8; Hatton v. Bodan Lumber Co., 57 Tex. Civ. App. 478, 123 S. W. 163, 167 (writ refused).

The judgment of the trial court is affirmed.